Rockingham
No. 2004-857

## Chester Rod and Gun Club, Inc.

### v.

### Town of Chester

Argued: May 10, 2005
Opinion Issued: September 2, 2005

*Normand & Associates, P.A.*, of Manchester (*James A. Normand* on the brief and orally), for the plaintiff.

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Dean B. Eggert* on the brief and orally), for the defendant.

GALWAY, J. The defendant, the Town of Chester (Town), appeals from the order of the Superior Court (*McHugh*, J.) reversing the denial by the Town's zoning board of adjustment (ZBA) of a variance requested on behalf of the plaintiff, Chester Rod and Gun Club, Inc. We affirm in part, reverse in part, and remand.

The record supports or the parties stipulated to the following facts. In September 2001, Town voters approved a warrant article that authorized Town selectmen to lease certain Town land so that a telecommunications tower could be built on it. Although the warrant article authorized the selectmen to enter into a lease with "SBA Towers," the selectmen did not do so.

In January 2003, AT & T Wireless and a telecommunications tower builder, National Tower, L.L.C. (National Tower), applied for a variance to construct a 150-foot telecommunications tower on the plaintiff's property. Obtaining the variance was necessary because a telecommunications tower is not a permitted use in the residential district in which the property is located.

Before the ZBA held a hearing on the variance application, AT & T Wireless negotiated a contract with the Town to construct a telecommunications tower on the Town land. On May 21, 2003, the Town entered into a lease with National Tower, on behalf of AT & T Wireless, to lease certain Town land so that National Tower could build electric and telephone facilities on it.

On July 1, 2003, the ZBA heard the variance application submitted on the plaintiff's behalf. Following the hearing, the ZBA denied the variance. The ZBA gave the following reasons for the denial:

1.  Public Interest: The Board of Selectmen appeared before the ZBA and presented convincing evidence that the public interest of the Town was expressed by the citizens at the Town Meeting when they previously voted to locate a telecommunications facility on the Town Transfer Station property. The Town Warrant and the existence of a lease agreement with the Town for a telecommunications facility are both relevant to the question of public interest. The legislative body of a town is the ultimate law and policy making body and when the citizens vote as a legislative body, they express the public interest of the Town. In light of the co-location requirements of the Ordinance the granting of a variance would frustrate the ability of the Town to fulfill its pending lease agreement for a telecommunications facility on the Town Transfer Station property, and would frustrate the public interest established by the Town Warrant Article.

2.  Hardship: The applicant has not shown that the granting of the variance would not injure the public or private rights of others. The Town Warrant and the subsequent lease agreement establish public rights of the Town which will be injured by granting this variance.

*See Simplex Technologies v. Town of Newington*, 145 N.H. 727, 732 (2001). The plaintiff moved for rehearing, which the ZBA denied, reiterating that "the town vote, the legislative body, does represent the town interest."

The Town and AT & T Wireless subsequently sought a variance to build a telecommunications tower on the Town land, which, like the plaintiff's property, is located in a residential district. This application was similar to the one submitted on the plaintiff's behalf. The ZBA approved the Town's application.

The plaintiff appealed the denial of the request for a variance submitted on its behalf to the superior court, which ruled in the plaintiff's favor. The court found that the ZBA improperly relied upon the September 2001 warrant article to conclude that granting the variance would be contrary to the public interest and would injure the public rights of others. The court

reasoned that the Town's "contract for the construction of a similar tower on its property is not a basis for the Board finding that it was not in the public interest to grant the variance in favor of the plaintiff." The court vacated the ZBA's decision and ordered it to grant the variance. This appeal followed.

We will uphold the trial court's decision unless the evidence does not support it or it is legally erroneous. *Bacon v. Town of Enfield*, 150 N.H. 468, 471 (2004). For its part, the trial court must treat all factual findings of the ZBA as *prima facie* lawful and reasonable. RSA 677:6 (1996). It "may set aside a ZBA decision if it finds by the balance of probabilities, based on the evidence before [it], that the ZBA's decision was unreasonable." *Simplex*, 145 N.H. at 729.

■ The Town first argues that the trial court erred by ruling that the ZBA incorrectly defined the relevant public interest. To place this issue in context, we believe it helpful to review the requirements for obtaining a variance. To obtain a variance, an applicant must show that: (1) granting the variance will not be contrary to the public interest; (2) special conditions exist such that a literal enforcement of the provisions of the ordinance will result in unnecessary hardship; (3) granting the variance is consistent with the spirit of the ordinance; (4) by granting the variance substantial justice is done; and (5) granting the variance does not diminish the value of surrounding properties. *See Vigeant v. Town of Hudson*, 151 N.H. 747, 751 (2005); *see also* RSA 674:33, I(b) (Supp. 2004).

■ When, as here, a use variance is sought, applicants must establish unnecessary hardship by proof that: (1) the zoning restriction as applied to their property interferes with their reasonable use of the property, considering the property's unique setting in its environment; (2) no fair and substantial relationship exists between the general purposes of the zoning ordinance and the specific restriction on the property; and (3) the variance would not injure the public or private rights of others. *Vigeant*, 151 N.H. at 751.

■ This appeal asks that we construe the requirements that the variance not be "contrary to the public interest" or "injure the public rights of others." These requirements are coextensive and are related to the requirement that the variance be consistent with the spirit of the ordinance. *See Bacon*, 150 N.H. at 471. As one commentator has explained:

> The standards which limit the power of administrative boards to vary the application of the zoning regulations in specific cases are intended to provide administrative relief in individual cases of unnecessary hardship, without injury to the rights of landowners

other than the applicant, and without substantial interference with the community's plan for the efficient development of its land. Accordingly, an applicant for a variance must prove not only that a literal application of the ordinance will result in unnecessary hardship . . ., but also that the variance he seeks will not harm landowners in the vicinity of his proposed site, or prevent the accomplishment of the purposes of the zoning scheme. The public interests are protected by standards which prohibit the granting of a variance inconsistent with the purpose and intent of the ordinance, which require that variances be consistent with the spirit of the ordinance, or which permit only variances that are in the public interest.

3 K. YOUNG, ANDERSON'S AMERICAN LAW OF ZONING § 20.41, at 546-47 (4th ed. 1996).

■ The first step in analyzing whether granting a variance would be contrary to the public interest or injurious to the public rights of others is to examine the applicable zoning ordinance. *See Coderre v. Zoning Bd. of Review of City of Pawtucket*, 251 A.2d 397, 401 (R.I. 1969). "As the provisions of the ordinance represent a declaration of public interest, *any* variance would in some measure be contrary thereto." *Heffernan v. Zoning Board of Review*, 144 A. 674, 676 (R.I. 1929) (emphasis added). Thus, to be contrary to the public interest or injurious to the public rights of others, the variance must "unduly, and in a marked degree" conflict with the ordinance such that it violates the ordinance's "basic zoning objectives." *Coderre*, 251 A.2d at 401.

■ One way to ascertain whether granting the variance would violate basic zoning objectives is to examine whether it would "alter the essential character of the locality." *Id.*; *see* YOUNG, *supra* § 20.43, at 554-55. As "the fundamental premise of zoning laws is the segregation of land according to uses," *Harrington v. Town of Warner*, 152 N.H. 74, 78 (2005), "[a] variance must be denied if the proposed use will alter the essential character of the neighborhood," YOUNG, *supra* § 20.43, at 554-55.

■ Another approach to determining whether granting the variance would violate basic zoning objectives is to examine whether granting the variance would threaten the public health, safety or welfare. "The dominant design of any zoning act is to promote the general welfare." *Van Meter v. H. F. Wilcox Oil & Gas Co.*, 41 P.2d 904, 911 (Okla. 1935). "Since all zoning regulations are imposed under the police power," requiring that the variance not adversely affect the public health, safety or welfare "probably applies whether or not it is spelled out in the ordinance."

YOUNG, *supra* § 20.14, at 444-45; *see Dow v. Town of Effingham*, 148 N.H. 121, 126 (2002).

Thus, for instance, in *Carter v. Derry*, 113 N.H. 1, 3 (1973), we upheld the zoning board's determination that granting the variance would be contrary to the public interest because it would threaten the public health, safety or welfare. The plaintiff in that case sought a variance from the town's zoning ordinance that required residential lots not supplied by a community or public water or sewer system to contain at least 25,000 square feet. *Carter*, 113 N.H. at 2. The plaintiff's property contained 13,000 square feet and was surrounded by residences. *Id.* at 2-3. The zoning board found that, because other residences surrounded it, the plaintiff's lot could not safely support a septic tank or leaching field. *Id.* Consequently, the zoning board found that granting the variance would be contrary to the public interest because of the potential health threat of adding another residence, with its concomitant leaching field or septic tank, to an overcrowded area. *Id.* at 3. We affirmed, holding that "[t]o grant a variance to the plaintiff in this relatively congested residential area under these circumstances would be against the public interest." *Id.*; *see also Vannah v. Bedford*, 111 N.H. 105, 111-12 (1971) (variance would be contrary to public interest because it would result in increased traffic congestion).

The ZBA here erred by looking to the vote upon the September 2001 warrant article as a declaration of the public interest. The relevant public interest is set forth in the applicable zoning ordinance. The record shows that the purpose of the ordinance creating the residential zone in which the plaintiff's property is located is to "recognize the unique scenic, historic, rural and natural characteristics" of this part of the Town, "while encouraging development ... in a manner which will protect these important characteristics."

█ Rather than examining whether the variance would unduly conflict with basic zoning objectives by altering the essential character of the neighborhood, or by threatening the public health, safety and welfare, the ZBA relied upon the effect that the variance would have upon the Town's incipient plan to build a telecommunications tower elsewhere. This, too, was error. Thus, we agree with the trial court that the ZBA incorrectly defined the relevant public interest.

The Town next asserts that granting the variance would be contrary to the public interest and injure the public rights of others because the Town's zoning ordinance does not permit telecommunications towers to be built both on the plaintiff's property and on the Town's property. The ordinance to which the Town refers governs "Telecommunications Facility

District[s]." Although the record demonstrates that the plaintiff's property is not located in a "Telecommunications Facility District," the record is unclear as to whether this ordinance nonetheless applies to the plaintiff's variance request. We thus express no opinion as to whether granting the variance would be contrary to the public interest or injure the public rights of others. These are matters for the ZBA to resolve in the first instance. *See Shopland v. Town of Enfield*, 151 N.H. 219, 223 (2004).

By ordering the ZBA to grant the variance, we believe that the trial court erred. When reviewing a decision of a zoning board of adjustment, the superior court acts as an appellate body, not as a fact finder. *See Lone Pine Hunters' Club v. Town of Hollis*, 149 N.H. 668, 669-70 (2003); *see also* RSA 677:6 (1996). The trial court's review "is not to determine whether it agrees with the zoning board of adjustment's findings, but to determine whether there is evidence upon which they could have been reasonably based." *Lone Pine Hunters' Club*, 149 N.H. at 670 (quotation omitted). The court thus may not review the evidence *de novo. Id.*

Here, once the trial court determined that the ZBA applied the wrong legal standard to determine whether granting the variance would be contrary to the public interest or injure the public rights of others, it was obliged to remand to the ZBA to reconsider the evidence against the correct legal standard. Remand was unnecessary only if the trial court could find, as a matter of law, that the correct legal standard was met. *See id.*; *cf. Appeal of Cote*, 139 N.H. 575, 580 (1995).

Having carefully reviewed the certified record, we hold that it was insufficient for the trial court to have concluded, as a matter of law, that granting the variance would not be contrary to the public interest or injure the public rights of others. Even if the certified record were sufficient for the court to reach this conclusion, ordering the ZBA to grant the variance was improper where the ZBA made no findings as to the other requirements for a variance and the record was insufficient for the court to conclude, as a matter of law, that these requirements were met.

The Town asserts that the ZBA, in fact, found that at least one other variance requirement was not met. The Town contends that the ZBA found that granting the variance would injure the private rights of others. The Town notes that the ZBA's decision states that the applicant "has not shown that the granting of the variance would not injure the public or private rights of others." We do not read this statement in isolation, but rather in the context of the ZBA's decision as a whole. When read in context, we believe that the sentence that follows this statement, which refers exclusively to the alleged injury to the public rights of others, modifies it. In the following sentence, the ZBA explains that the applicant

has not met this variance requirement because "[t]he Town Warrant and the subsequent lease agreement establish public rights of the Town which will be injured by granting this variance." The certified record supports this construction. Although a board member commented that abutters had testified about diminished property values, this same board member noted that there was "no documentation" about this. We thus disagree with the Town that the ZBA found that granting the variance would injure the private rights of others. In light of this, we need not address the Town's assertion that the trial court failed to defer to this finding.

Based upon our review of the record, we reverse the trial court's order requiring the ZBA to grant the variance. The trial court shall remand to the ZBA for such further proceedings as it may deem necessary. On remand, the ZBA shall, among other things, consider whether granting the variance is contrary to the public interest or injures the public rights of others under the principles we have enunciated here. While we are sympathetic to the plaintiff's need for finality in this case, it is not our role, nor was it the trial court's role, to act as a super zoning board and decide factual matters in the first instance. *See Shopland*, 151 N.H. at 223.

In light of our instruction that the trial court remand to the ZBA, we need not address the Town's argument that the trial court denied it the "meaningful opportunity to present argument in support of the ZBA's finding that the [plaintiff] had not demonstrated hardship."

The dissent argues that remand to the ZBA is not required. The dissent relies, in part, upon the trial court's statement that the minutes of the ZBA's July 1, 2003 meeting "suggest[ ] that but for the contract which the Town had to locate a tower on its property the Board would have granted the plaintiff's variance application." The dissent implies that this is a factual finding. We disagree.

First, we do not agree that the trial court's statement about what the record "suggests" was a factual finding. Second, and most importantly, even if this were a factual finding, we hold that the record does not support it. *See Robinson v. Town of Hudson*, 149 N.H. 255, 257 (2003).

The minutes of the ZBA's July 1, 2003 meeting do not demonstrate that the ZBA would have granted the variance but for its finding that to do so would be contrary to the public interest and injure the public rights of others. *See id.* At least some of the ZBA's members appear to have believed that other requirements were *not* met. One board member stated that, in her view, denying the variance would not "interfere with the reasonable use of the property." Another board member stated that she had a "problem" with "[t]he hardship, with reasonable use that the variance would injury [*sic*] to public and private rights of others." The ZBA's decision itself is silent as to whether the ZBA found that the

variance request met the other requirements for a variance. The record thus does not support a finding that the ZBA would have granted the variance but for its finding that to do so would be contrary to the public interest or violate the public rights of others. *See id.*

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and DUGGAN, J., concurred; NADEAU, J., with whom DALIANIS, J., joined, concurred in part and dissented in part.

NADEAU, J., concurring in part and dissenting in part. While I agree with both the trial judge and the majority that the zoning board of adjustment (ZBA) erred in denying the plaintiff's application for a variance based upon the ZBA's interpretation of the public interest factor set forth in RSA 674:33, I(b), I disagree that this error requires that the case be remanded to the ZBA for further proceedings. Given the record before us, I would affirm the decision of the trial court granting the variance.

As the majority notes, the trial court's decision must be upheld unless the evidence does not support it or it is legally erroneous. *Harrington v. Town of Warner*, 152 N.H. 74, 77 (2005). In this case, the parties submitted an agreed statement of facts. The trial court also reviewed the certified record before construing the ZBA's decision, concluding that, "but for the contract which the Town had to locate a tower on its property, the ZBA would have granted the plaintiff's variance application." While the majority concludes that the minutes "do not *demonstrate* that the ZBA would have granted the variance but for its finding that to do so would be contrary to the public interest and injure the public rights of others" (emphasis added), I disagree that that is the correct standard of review. Rather, the evidence must simply support the trial court's conclusion. *Id.* I believe that it does.

The majority apparently concludes from the trial court's order that the court found that the only factor *considered* by the ZBA in making its determination was the "Town's incipient plan to build a telecommunications tower elsewhere." The majority, however, also cites examples of several issues discussed by the ZBA before making its decision, including whether denying the variance would interfere with the reasonable use of the property and whether it would injure the public and private rights of others. Accordingly, I do not believe that we can read the trial court order so narrowly. It seems clear to me that the trial court did not address all the factors that may have been considered by the ZBA because the court reasonably found that the ZBA denied the variance

solely upon the basis of the town's pending contract for a telecommunications tower.

In its reply brief, the town argues that the trial court erred by addressing the hardship question given its earlier orders that it would hold the question in abeyance. Because this issue was neither raised in its motion for reconsideration filed in the superior court nor in its notice of appeal, it is not properly before us. *See State v. Blackmer*, 149 N.H. 47, 48-49 (2003); *N.H. Dep't of Corrections v. Butland*, 147 N.H. 676, 679 (2002). Based upon the record before us, then, I would hold that the trial court was correct in its conclusion that the ZBA erred in denying the plaintiff's request for a variance upon the basis of failure to show hardship.

The ZBA's error in its interpretation of the public interest did not result from an application of the wrong legal standard. It resulted from a misapplication of the *existing* legal standard. Nor is the ZBA's error based upon any failure to determine whether the variance is contrary to the public interest or injures the public rights of others. It is based upon the inescapable conclusion that it applied existing legal standards and limited its denial to one unsupportable finding.

The ZBA had the opportunity to consider all the evidence before it and to make any findings it believed supported its denial of the variance. As the majority notes, the ZBA's decision is silent as to whether it found that the variance request met the other requirements. Even if there were no evidence that the ZBA actually considered the other requirements for a variance, we should, absent specific language in its decision to the contrary, assume that it did so. Here, however, as the majority itself points out, the minutes of the ZBA's meeting show that the ZBA members indeed *did* consider other requirements for a variance. While the minutes indicate that *individual* board members may have believed that certain other requirements were not met, the *ZBA's* ruling was that only *one* requirement was not met.

It has long been our policy to discourage piecemeal appeals. *See Appeal of Courville*, 139 N.H. 119, 124 (1994). Yet, today, despite evidence in the minutes that supports the trial court's ruling to the contrary, we *assume* that the ZBA did not fully perform its job of considering the application before it. We thereby in essence act as a super zoning board of adjustment, granting a rehearing to the opponents of the variance and subjecting the property owner to the application process again. We give the ZBA a second chance to deny the variance. Taken to the extreme, the ZBA on remand might consider only one additional factor in this variance request and, after finding it unsatisfied, wait to see whether that decision was upheld on appeal before considering, on remand, the next factor. To allow such a practice flies in the face of all notions of judicial economy and

fundamental fairness in appellate review. All parties to this case are entitled to finality and should not be required to incur additional expense in litigating this matter. Nor should the property owner suffer further restriction on the use of its property.

The ZBA denied the variance solely, and erroneously, upon the basis of the town's pending contract for a telecommunications tower. It is for that reason denial of the variance was unlawful; it is for that reason the ZBA's decision should be reversed; it is for that reason the variance should be granted; it is for that reason remand is unnecessary.

It is for these reasons, respectfully, I dissent.

DALIANIS, J., joins in the opinion of NADEAU, J.